1  Timothy A. Horton (S.B.N. 205414)
   THE LAW OFFICE OF TIMOTHY A. HORTON
2  600 W. Broadway, Suite 700
   San Diego, CA 92101
3  Telephone: (619) 272-7017
   timhorton@timhortonlaw.com
4

5

6  *Attorneys for Defendants Howell*
   *Management Services, LLC and Chris Howell*

7
                  **UNITED STATES DISTRICT COURT**
8
                 **SOUTHERN DISTRICT OF CALIFORNIA**
9

10

11  APARNA VASHISHT-ROTA, an          Case No. 3:22-cv-00900-GPC-MSB
    individual,
12                                     **DEFENDANTS HOWELL**
             Plaintiff,                **MANAGEMENT SERVICES, LLC**
13                                     **AND HOWELL'S MEMORANDUM**
        v.                             **IN SUPPORT OF MOTION TO**
14                                     **DISMISS**
    BLUECHIP SERVICES
15  (INTERNATIONAL), an India Private  [Filed concurrently with Notice of
    Limited Company, BLUECHIP         Motion, Declaration of Timothy A.
16  SERVICES INTERNATIONAL            Horton]
    CHENNAI, an India Private Limited
17  Company, Mr. MOHAMMED
    HARISS, an individual, Mrs. MUBEEN  Judge: Hon. Gonzalo P. Curiel
18  TAJ, an individual, HOWELL        Date:  Friday, September 16, 2022
    MANAGEMENT SERVICES, LLC, a       Time:  1:30 p.m.
19  Utah LLC; CHRIS HOWELL, an        Courtroom: 2D (Schwartz Courthouse)
    individual, and DOES 1-25,
20

21          Defendants.

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Table of Contents

Page(s)

I.     INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . .   1

II.    BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . .   1

       A.    Plaintiff's Work for the HMS Defendants ended
             Years Ago and Resulted in Litigation in Utah. . .  . . . . . . .   2

       B.    Plaintiff Previously Filed Three Duplicative
             Lawsuits in California . . . . . . . . . . . . . . . . . . . .  . . . . . . .   4

       C.    Plaintiff's Now Fourth Duplicative Lawsuit. . . . .  . . . . . . .   5

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . .   7

       A.    Plaintiff's Duplicative Litigation Against HMS is
             Improper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . .   7

             1.   Plaintiff is Collaterally Estopped from Again
                  Relitigating that an Enforceable Utah Forum
                  Selection Clause Requires Dismissal . . . . . . .  . . . . . . .   7

             2.   Plaintiff Cannot Split Claims to Pursue
                  Simultaneous (or Serial) Duplicative Suits
                  Against the HMS Defendants . . . . . . . . . . . .  . . . . . . .   10

       B.    Plaintiff's Convoluted Allegations Do Not
             Provide Fair Notice of a Plausible Claim  . . . . . .  . . . . . . .   12

       C.    Plaintiff Alleges Facts Inconsistent with her
             Claim for Unfair Competition in Supposed
             Violation of the Sherman Act . . . . . . . . . . . . . . .  . . . . . . .   15

             1.   Plaintiff's Nonsensical Antitrust Allegations
                  Cannot Overcome Plausible and Ordinary
                  Legal Conduct by Defendants . . . . . . . . . . . .  . . . . . . .   16

             2.   Plaintiff's Personal Grievance is Not an Anti-
                  Trust Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . .   17

             3.   Exclusivity in an Insubstantial Market Share
                  Is Not Actionable . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . .   17

D.    Plaintiff Lacks Standing and Capacity to Bring
      Her Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . .    . . . . . . .    18

E.    Plaintiff's Failure to Serve the Indispensable BC
      Defendants Requires Their Dismissal and
      Dismissal of the HMS Defendants . . . . . . . . . . .    . . . . . . .    19

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    . . . . . . .    22

## **Table of Authorities**

**Cases**                                                                                                              **Page(s)**

*Adams v. California Dep't of Health Servs.* (9th Cir. 2007) 487 F.3d
684. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 11

*Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947
(9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir.
2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Agha-Khan v. United States  No. 1:13-cv-01378*, 2015 WL 5734380
(E.D. Cal. Sept. 29, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP,* 592
F.3d 991 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Amarel v. Connell, 102 F.3d 1494 (9th Cir. 1996)* . . . . . . . . . . . . . . . .   18

*Ass'n. of Wash. Publ. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696
(9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18-19

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 571
U.S. 49 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). . . . . . . . . . . . . .   15, 16

*Brantley v. NBC Universal, Inc.,* 675 F.3d 1192 (9th Cir. 2012). . . . . .   16

*Bravo v. Cnty. of San Diego*, No. C 12-06460, 2014 WL 555195
(N.D. Cal. Feb. 10, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) . .   16, 17

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir.
2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Clements v. Airport Auth. of Washoe Cty..*, 69 F.3d 321 (9th Cir
1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

LAW OFFICE OF
TIMOTHY A. HORTON

iii

Case No. 3:22-cv-00900-GPC-MSB
HMS DEFS.' MOTION TO DISMISS

1726344.3

*Cook v. C.R. England, Inc.,* No. 12-cv-3515, 2012 WL 2373258
(C.D. Cal. June 21, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d
861 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Evergreen Park Nursing & Convalescent Home, Inc. v. Am. Equitable
Assurance Co.*, 417 F.2d 1113 (7th Cir. 1969) . . . . . . . . . . . . . . . . . . .  21

*Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015). . . . . .  18

*Feliz v. MacNeill*, 493 Fed. App'x 128, 131 (1st Cir. 2012). . . . . . . . .  20

*Freeman v. NW. Acceptance Corp.*, 754 F.2d 553 (5th Cir.1985).. . . .  21

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947) . . . . . . . . . . . . . .  7

*Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) . . . . .  7 n.2

*Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010). . . . . . . . . . . . . . .  12

*Hip Hop Beverage Corp. v. Monster Energy Co*., 733 F. App'x 380,
381 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).. . . . . . . . . . .  12

*In re Am. W. Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994). . . . . . . . . .  19

*In re Associated Vintage Group, Inc.*, 283 B.R. 549 (B.A.P. 9th Cir.
2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10-11

*In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).. . . . . . . .  18

*In re Toyota Motor Corp.*, 785 F. Supp. 2d 883 (C.D. Cal. 2011). . . . .  22

*Int'l Union v. Karr,* 994 F.2d 1426 (9th Cir.1993). . . . . . . . . . . . . . . .  11

*Jacobson v. Shwarzenegger*, 226 F.R.D. 395 (C.D. Cal. 2005). . . . . . .  13

*Jones v. Community Redev. Agency*, 733 F.2d 646 (9th Cir. 1984). . . .  13

*Kendall v. Visa U.S.A.*, Inc., 518 F.3d 1042 (9th Cir. 2008). . . . . . . . .   15, 16

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.* 342 U.S. 180, 72 S.Ct. 219 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Korea Radio USA, Inc. v. NY Metro Radio Korea, Inc.*, No. CV 07-7418 ODW(RCX), 2008 WL 11338439 (C.D. Cal. Feb. 11, 2008). . .   9

*Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Laskowitz v. Shellenberger,* 107 F. Supp. 397, 398 (S.D. Cal.1952). .   19

*Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504 (9th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 17

*Lucas v. Natoli*, 936 F.2d 432 (9th Cir. 1991). . . . . . . . . . . . . . . . . . .   20

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001). . . . . . . . . .   7

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) . . . . . . . . . . . . . . . .   12, 13

*Meyer v. Howmedica Osteonics Corp.*, No. 14CV2496 AJB NLS, 2015 WL 728631 (S.D. Cal. Feb. 19, 2015). . . . . . . . . . . . . . . . . . .   7

*Miyasaki v. Treacy*, No. 12-CV-04427, 2014 WL 6687321 (N.D. Cal. Nov. 24, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Nehrlich v. JLW-TW Corp.,* No. 15-CV-00521-BAS(BLM), 2016 WL 127584 (S.D. Cal. Jan. 11, 2016)). . . . . . . . . . . . . . . . . . . . . . . . . .   7 n.2

*Neitzke v. Williams*, 490 U.S. 319, 330, 109 S. Ct. 1827 (1989). . . . . .   12

*Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671 (9th Cir. 1981). . . .   11-12, 13

*Nylock Corp. v. Fastener World Inc.*, 396 F.3d 805 (7th Cir. 2005). . .   20

*Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17, 18

*Paiute-Shoshone Indians of Bishop Cmty. Colony v. City of Los Angeles*, 637 F.3d 993 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . .   21, 22

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118, 88 S.Ct. 733 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995). . . . .   18

*Rivera v. Am. Fed'n of State, Cty., and Mun. Employees, AFL-CIO, Local 444* No. 3:16-cv-04959, 2017 WL 3021038 (N.D. Cal. July 17, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Rutman Wine Co. v. E & J Gallo Winery*, 829 F.2d 729 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20-21

*Schmidt v. Herrmann*, 614 F.2d 1221 (9th Cir. 1980). . . . . . . . . . . . .   13

*Schutten v. Shell Oil Co.*, 421 F.2d 869 (5th Cir.1970). . . . . . . . . . . . .   21

*Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal. 3d 491 (1976)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Brazil v. U.S. Dep't of Navy*, 66 F.3d 193 (9th Cir. 1995). . . . . . . . . . .   12

*Simon v. Hartford Life, Inc.*, 546 F.3d 661 (9th Cir. 2008). . . . . . . . . .   19

*Single Chip Systems Corp. v. Intermec IP Corp.* 495 F.Supp.2d 1052 (S.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Somers v. Apple, Inc.*, 729 F.3d 953, 963-94 (9th Cir. 2013). . . . . . . .   16, 17

*Sparling v. Hoffman Construction Co., Inc.*, 864 F.2d 635, 640 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*State Oil Co. v. Khan, 522 U.S. 3 (1997)*. . . . . . . . . . . . . . . . . . . . . . .   11

*Taylor v. Sturgell* 553 U.S. 880 (2008). . . . . . . . . . . . . . . . . . . . . . . . .   10

*Teetex LLV v. Zeetex, LLC*, No. 20-cv-07092-JSW (N.D. Cal. April 22, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*United States v. Haytian Republic*, 154 U.S. 118 (1894). . . . . . . . . . . .   10

*United States v. High Country Broad. Co.*, 3 F.3d 1244 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001). . . . . .   18

*Verizon Comms., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Western Sys., Inc. v. Ulloa*  958 F.2d 864 (9th Cir. 1992). . . . . . . . . . .   11

*Wolfson v. Brammer* 616 F.3d 1045 (9th Cir. 2010). . . . . . . . . . . . . . .   8

*Wollam Int'l Corp. v. New Era Decorative Fabrics, Inc.*, B187650, 2007 WL 1866769, *8 (Cal. Ct. App. June 29, 2007). . . . . . . . . . . . . .   9

**Statutes and Rules**                                                                           **Page(s)**

Federal Rules of Civil Procedure, Rule 4  . . . . . . . . . . . . . . . . . . . . . . .   20

Federal Rules of Civil Procedure, Rule 8  . . . . . . . . . . . . . . . . . . . . . . .   12, 13

Federal Rules of Civil Procedure, Rule 12  . . . . . . . . . . . . . . . . . . . . . .   1, 12, 20

Federal Rules of Civil Procedure, Rule 19  . . . . . . . . . . . . . . . . . . . . . .   20, 21

Federal Rules of Civil Procedure, Rule 41 . . . . . . . . . . . . . . . . . . . . . . .   1, 13

15 U.S.C. § 1 *et seq.* (Sherman Act) . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 16-19

**Related/Prior Cases**                                                                        **Page(s)**

*Howell Management Services, LLC v. August Education Group et al.*, First Judicial District Court of Cache County, Utah, Case No. 170100325, filed Nov. 2, 2017 (the "Utah Litigation")  . . . . . . . . . . .   2, 3, 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICE OF
TIMOTHY A. HORTON

vii

Case No. 3:22-cv-00900-GPC-MSB
HMS DEFS.' MOTION TO DISMISS

1726344.3

*Aparna Vashisht-Rota v. Howell Management Services, et al.*, S.D.
Cal. Case No. 3:18-cv-02010-L-AGS (the "2018 California
Litigation") filed on July 17, 2018 and removed on Aug. 28, 2018. . .    4, 10

*Aparna Vashisht-Rota v. Howell Management Services, LLC*, S.D.
Cal. Case No. 3:19-cv-0512-L-MDD (the "2019 California
Litigation") filed on March 18, 2019. . . . . . . . . . . . . . . . . . . . . . . . . .    3-5, 8, 10

*Aparna Vashisht-Rota v. Howell Management Services, LLC*, S.D.
Cal. Case No. 3:20-cv-00321 RBM-KSC (the "2020 California
Litigation") filed on Feb. 19, 2020. . . . . . . . . . . . . . . . . . . . . . . . . .    4-5, 10

*Aparna Vashisht-Rota v. HMS, LLC et al.*, First Judicial District
Court of Cache County, Utah, Case No. 200100119, filed April 17,
2020 ("Utah *Pro Se* Case") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3-4

*Aparna Vashisht-Rota v. Harrisburg University*, S.D. Cal. Case No.
20-cv-967-RBM-KSC (first "Third-Party California Case"), filed on
May 26, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5 n.1

*Aparna Vashisht-Rota v. Ottawa University*, S.D. Cal. Case No. 20-
cv-959-WQH-MSB (second "Third-Party California Case"), filed on
May 26, 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5 n.1

*Aparna Vashisht-Rota v. Alliant Int'l University*, Cal. Sup. Ct., Case
No. 37-2020-00024183-CU-BT-CTL (third "Third-Party California
Case"), filed on July 7, 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5 n.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICE OF
TIMOTHY A. HORTON

viii

Case No. 3:22-cv-00900-GPC-MSB
HMS DEFS.' MOTION TO DISMISS

1726344.3

Defendants Howell Management Services, LLC ("HMS"), and Chris Howell ("Howell") (collectively, "HMS Defendants") respectfully submit this Memorandum in Support of their Motion to Dismiss the claim against them by Plaintiff Aparna Vashisht-Rota ("Plaintiff"), the Fifth Cause of Action. The HMS Defendants move under Rules 12(b) and 41 of the Federal Rules of Civil Procedure, including on the basis that Plaintiff is collaterally estopped from relitigating that her claims against them must be asserted, if at all, in the State of Utah on the basis of *forum non conveniens* and a governing forum selection clause between the parties.

## I.  <u>INTRODUCTION</u>

Continuing her practice of filing duplicative lawsuits against them, Plaintiff Vashisht-Rota brings yet another *pro se* claim against the HMS Defendants which necessarily arises out of the lone relationship between them – a contractual business relationship ended years ago. The dispute between the parties was first pleaded in a case in Utah brought by Defendant HMS five years ago – followed by Plaintiff in three cases in this Court, two of which have already been dismissed in deference to Utah and the third with a pending motion to dismiss. Unhappy with the outcomes in the Utah case and her own later lawsuits, Plaintiff has pursued a bad faith course of action to file duplicative claims against the HMS Defendants over and over again, seeking a different result. The origin, the Utah case, involves a business dispute where Plaintiff, through her business entity, contracted with HMS as an independent consultant in the graduate educational recruiting space. In doing so, Plaintiff agreed to Utah court as the exclusive forum for disputes between them. Plaintiff's latest claim is yet one more improper attempt at duplicative, overlapping litigation in disregard of basic principles of a fair judicial process and, again, must be dismissed.

## II.  <u>BACKGROUND FACTS</u>

While the convoluted allegations of her "First Amended Complaint" ("FAC") removed to this Court are impossible to fully decipher, it alleges a lone claim against the HMS Defendants for unfair competition in apparent violation of the Sherman

Act federal antitrust statute. Plaintiff's original complaint was brought against four other defendants (the Bluechip or "BC Defendants"), who are citizens of India and business partners of HMS. Construing conflicting factual allegations, Plaintiff seems to perhaps claim that the HMS Defendants joined the BC Defendants in some type of anticompetitive agreement to exclude her from work. However convoluted, what is apparent from her allegations, is that Plaintiff's claim against the HMS Defendants necessarily arises from the lone former contractual business relationship between them and the litigation about it, which she has spent years multiplying – and has twice already been dismissed in favor of proper Utah jurisdiction.

### A.   Plaintiff's Work for the HMS Defendants ended Years Ago and Resulted in Litigation in Utah.

In November of 2017, Defendant HMS initiated litigation against Plaintiff and her entity, August Education Group ("AEG") in the First Judicial District in and for Cache County, Utah (the "Utah Litigation"), namely, *Howell Management Services, LLC v. August Education Group et al.*, No. 170100325 (the "Utah Litigation") (*See* Docket in the Utah Litigation, attached to the Declaration of Timothy A. Horton ("Horton Declaration"). In that Utah Litigation, HMS asserts causes of action for declaratory relief that HMS does not owe Plaintiff or her entity any further compensation, and breach of contract claims related to the parties' agreement. HMS also seeks relief for various torts and requests injunctive relief related to Plaintiff's email harassment campaign where she falsely claimed to HMS business partners that she was subject to egregious sexual harassment and discrimination at the hands of HMS and its principals, Chris Howell and Justin Spencer, during her work for them.

As explained in the Utah Litigation, Plaintiff entered into several agreements with HMS through her consulting agency, AEG, by which AEG acted as an independent consultant, termed an authorized representative, for HMS through the provision of AEG's consulting services. In denying Plaintiff Vashisht-Rota and AEG's motion to compel arbitration, the Utah court concluded that the superseding

agreement that governed the parties' relationship did not contain an arbitration provision. (*Id*.). Rather, that Third Agreement executed by Howell for HMS and Plaintiff for AEG provides that "With respect to any claim or action arising under this Agreement each party to the Agreement hereby (a) irrevocably submits to the exclusive jurisdiction of the Courts of the State of Utah …." (the "Forum Selection Provision") (2019 Cal. Litig., Case No. 3:19-cv-00512 [Dkt 18] at 6); *see also* Horton Decl. ¶ 5. The Third Agreement also provides that "This Agreement shall be governed by and construed in accordance with the laws of the State of Utah." (*Id*.).

Following the denial of the Motion to Compel Arbitration, AEG and Plaintiff answered and filed a Counterclaim, asserting causes of action against HMS for breach of contract for failing to pay amounts due for services provided under the agreement, as well as related claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. In her Counterclaim, Plaintiff alleged that HMS and its agents engaged in gender and religious harassment against her. (*See* Horton Decl. ¶ 6; Utah Counterclaim at ¶ 36; *see also* ¶¶ 39, 47, 53.)

The Utah Litigation is nearly complete. On September 2, 2020, the Utah Court enter an order striking the answer of Plaintiff Vashisht-Rota and her entity August Education Group, dismissing their counterclaim, and awarding sanctions to HMS for their willful violation of a Court order. Consequently, there is now a determination of liability in favor of the HMS Defendants and against Plaintiff, and all that remains is a trial to determine the extent of HMS's damages. Vashisht-Rota is pursuing an interlocutory appeal of terminating sanctions, which has been fully briefed and is awaiting either decision or oral argument.

The Utah Court also dismissed with prejudice a duplicative case filed *pro se* by Plaintiff, purporting to seek relief in her California cases and for the Utah Court to abandon its jurisdiction. (*Aparna Vashisht-Rota v. HMS, LLC et al.*, First Judicial District Court of Cache County, Utah, Case No. 200100119, filed April 17, 2020). On April 26, 2021, the Utah Court entered an order declaring Plaintiff a vexatious

1  litigant, which was affirmed by the Utah Court of Appeals – which also declared her

2  a vexatious litigant in that Court. *Vashish-Rota v. Howell Management Services*, 503

3  P.3d 526, 2021 UT App 133 (Utah App. Dec. 2, 2021). Plaintiff's petitions for

4  discretionary review of that order by the Utah Supreme Court were denied.

5      **B.      Plaintiff Previously Filed Three Duplicative Lawsuits in California**

6          In July of 2018, Plaintiff filed an action in the San Diego Superior Court,

7  which HMS removed as *Rota v. Howell Management Services, et al.*, S.D. Cal. Case

8  No. 3:18-cv-02010-L-AGS (the "2018 California Litigation"). In that case, Plaintiff

9  asserted claims against HMS and its principal, Chris Howell ("Howell") for various

10 violations of California's Labor Code and for Unlawful Business Practices under

11 California Business and Professions Code §§ 17200 *et seq*. (*Id*. at [Dkt. 1-2].) Upon

12 Defendants' Motion, the Honorable Judge Lorenz dismissed that 2018 lawsuit on the

13 basis that Plaintiff's claims were compulsory counterclaims that needed to be

14 asserted in the Utah Litigation, if at all. *Id*. at [Dkt. 22]. Plaintiff appealed.

15         In March of 2019, Plaintiff commenced yet another action in this Court

16 against HMS and Howell, *Rota v. Howell Management Services, LLC*, S.D. Cal.

17 Case No. 3:19-cv-0512-L-MDD (the "2019 California Litigation"). In that case,

18 Plaintiff recast her claims against HMS and Howell as ones for sexual harassment,

19 sexual and racial discrimination, retaliation in violation of public policy and the

20 California Labor Code, constructive discharge, intentional infliction of emotional

21 distress, violation of equal pay, and failure to prevent or correct discrimination and

22 harassment. *Id*. at [Dkt. 1]. Upon Defendants' Motion, Judge Lorenz, again

23 presiding, dismissed that case on the basis of *forum non conveniens* and the

24 governing Forum Selection Provision. (*Id*. at [Dkt. 18].) Rota appealed the dismissal.

25         While simultaneously pursuing her prior two duplicate lawsuits on appeal,

26 Plaintiff commenced yet a third lawsuit in this Court against HMS and Howell in

27 2020, *Rota v. Howell Management Services, LLC*, S.D. Cal. Case No. 3:20-cv-00321

28 RBM-KSC (the "2020 California Litigation"). In that case, Plaintiff again asserts

claims for various violations of California's Labor Code and for Unlawful Business Practices under California Business and Professions Code §§ 17200 *et seq*., unfair competition, fraud, false promises, unpaid wages, defamation, and a RICO violation. [Dkt 80]. Yet again, Plaintiff seeks recompense from the HMS Defendants for the same work at issue in the prior cases, arguing that some of the contracts, or parts of the contracts, were a product of coercion. These claims overlap in name and in substance with claims pending in Utah since 2017 and the claims Rota has already twice litigated and lost in this Court. The HMS Defendants' motion to dismiss that lawsuit has been fully briefed was taken under submission more than a year ago on March 11, 2021. While that motion was pending the Ninth Circuit affirmed the dismissals of both prior lawsuits by Plaintiff against the HMS Defendants, denying Plaintiff's requests for rehearing. *See* Case No. 3:19-cv-0512-L-MDD [Dkt. 148].

## C.    Plaintiff's Now Fourth Duplicative California Lawsuit

Adding the HMS Defendants to a lawsuit that she filed against a business partner of HMS,[1] Plaintiff continues to attempt to litigate the a dispute with the HMS Defendants at issue in the Utah Litigation and duplicated by her 2018, 2019, and 2020 California Litigation. On this occasion, Plaintiff's Fifth Cause of Action is the lone claim against the HMS Defendants and is styled as one for "Unfair Competition."  FAC [Dkt. 1-3] ¶¶ 82-101. Plaintiff appears to be attempting to allege conduct in "violation of the Sherman Act" (FAC ¶ 95) a federal antitrust statute (15 U.S.C. § 1 *et seq.*). While cast as something slightly different, her latest case is yet one more improper offshoot of litigation about her terminated contractual work for HMS that she has spent years improperly multiplying.

Unraveling Plaintiffs' tangled complaint reveals innumerable allegations

---

[1] As part of her campaign of multiplying litigation and harassing HMS through the judicial process, Plaintiff has filed three additional lawsuits against other business partners of HMS, two of which are pending in this District, and another recently dismissed in state court. *See* HMS' Notice of Related Case [Dkt. 3 at ¶¶ 6-8].

establishing that her claims against HMS arise out of the same core set of facts and involve the same legal issues that have been repeatedly adjudicated to belong only in a Utah court. Plaintiff repeats her claims that HMS owes her for work between 2015 and 2017. *See, e.g.,* FAC ¶ 28 (alleging she is "unpaid for th[e] two years" she "worked with HMS Defendants from October 2015 til (sic) March 2017"); ¶ 87 ("HMS owes Plaintiff a lot of money.")  Plaintiff repeats her claims that she was harassed by Howell during her work for HMS. *See, e.g.,* ¶ FAC ¶ 20 ("Plaintiff worked for the Main Agent [*i.e.*, HMS/Howell] for 2 years and was harassed and solicited for sexual favors when large sums of money were due."); ¶ 28 ("facing sexual harassment and solicitation"); *see also* ¶¶ 63, 64.

Plaintiff even includes repeated explicit reference to the already existing litigation which this latest claim improperly duplicates and multiples. FAC ¶ 20 ("Plaintiff is presently in ongoing litigation with the Main Agent [*i.e.*, HMS/Howell].") She references the original lawsuit filed by HMS in the proper form of Utah (FAC ¶ 28; "Defendant Howell and HMS sued Plaintiff and that matter is pending in Utah.") and the numerous duplicative lawsuits that she has filed (FAC ¶ 29; "[Plaintiff] had to file cases in California to capture all her claims"). She includes allegations indicating that her allegations here are intertwined with the existing litigation. *See, e.g.*, FAC ¶ 41 (the "defamatory statements" alleged here "harmed Plaintiff in her litigation with HMS"); ¶ 74 (the "interference" alleged here has "made the litigation between the main agent and Plaintiff more expensive"); ¶ 89 (the misconduct alleged here "is a substantial factor in the continuing litigation because HMS . . . is refusing to take corrective actions in rectifying its severe misconduct of soliciting favors from a coworker with compensation hostage for years"). Plaintiff's latest duplicative claim against the HMS Defendants necessarily shares the same nexus: the lone former business relationship between them – and litigation that has followed she has needlessly multiplied.

/ / /

## III.  <u>ARGUMENT</u>

### A.    Plaintiff's Duplicative Litigation Against HMS is Improper

As detailed above, Plaintiff's latest lawsuit against the HMS Defendants is the latest example in her years' long effort to avoid the Utah forum she contracted for and repeated rulings against her.[2] The law does not abide such blatant abuse of the judicial system and disregard for the most basic rules of pleading and practice.

#### 1. Plaintiff is Collaterally Estopped from Again Relitigating that an Enforceable Utah Forum Selection Clause Requires Dismissal.

Plaintiff is collaterally estopped from relitigating that the forum selection provision where she agreed to exclusive Utah state court jurisdiction in the contract governing her relationship with the HMS Defendants requires dismissal of any claim against them in California under the doctrine of *forum non conveniens.*

The doctrine of *forum non conveniens* allows a court to decline jurisdiction when case is better be tried elsewhere. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504 (1947)). As the Supreme Court has explained, the ordinary analysis changes "when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the proper forum." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). In short, "[t]he forum selection clause should control except in unusual cases." *Meyer v. Howmedica Osteonics Corp.*, No. 14CV2496 AJB NLS, 2015 WL 728631, at *12 (S.D. Cal. Feb. 19, 2015) (citing *Atl. Marine Const. Co.*, 571 U.S. 49, 63–65).

---

[2] To the extent necessary for the resolution of this motion to dismiss, Defendants request the Court take judicial notice of the related filings in other proceedings. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.") (internal quotations and citation omitted)); *Nehrlich v. JLW-TW Corp.,* No. 15-CV-00521-BAS(BLM), 2016 WL 127584, at *3 (S.D. Cal. Jan. 11, 2016) (citing Fed. R. Evid. 201(b)(2)).

The one-and-only relationship between Plaintiff and HMS Defendants is their former contractual business arrangement, which is governed by a Utah Forum Selection Provision that provided "any claim or action" arising between them would be "submit[ed] to the exclusive jurisdiction of the Courts of the State of Utah." (2019 Cal. Litig., Case No. 3:19-cv-00512, Order of Dismissal [Dkt 18] at 6.) In dismissing a prior attempt by Plaintiff at California litigation against the HMS Defendants, that provision was already conclusively determined to be "valid and enforceable" by Judge Lorenz of this District. (*Id.* at 8:18-20.) That included the prior determination that the clause "does not contravene public policy" and would not "deprive [Plaintiff] of her day in court." (*Id.* at 8:16-19, 7:21-8:2.) Given the particular language of the clause, it was also already resolved that "the forum selection clause demands the case be brought in a nonfederal forum," as such a California federal court must dismiss, not transfer, this matter. (*Id.* at 9:22-24.)

The requirements for collateral estoppel are all plainly met with respect to this issue. "[A] party is precluded from relitigating an issue if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the merits; and (4) the person against whom collateral estoppel is asserted was a party to or in privity with a party in the previous action." *Wolfson v. Brammer* 616 F.3d 1045, 1064 (9th Cir. 2010). Each of the elements has been met: Judge Lorenz ruled on the issue in favor of Defendants and against Plaintiff in a written decision following full briefing which resulted in dismissal and an order to close the case. *See* Order Granting Motion to Dismiss Case No. 3:19-cv-0512-L-MDD) [Dkt. 18]. Indeed, that dismissal (like that of a parallel duplicative case) was affirmed on appeal and Plaintiff's request for rehearing denied. *Id.* (Mandate Affirming Decision) [Dkt. 25].

Despite an attempt to recast or reanimate her claims in a different form, Plaintiffs' latest claim once again falls within the Utah forum selection provision and must be dismissed. As Plaintiff's contractual consulting work between with the

1    HMS Defendants, and the litigation about it that has followed, has been the only

2    relationship between the parties, it is necessarily the case that Plaintiff's latest claim

3    arises out of those same core facts covered by the Utah forum selection clause.

4    Indeed, Plaintiff repeats her claims of unpaid "wages" (*e.g.*, FAC ¶¶ 28, 87) by HMS

5    and "harassment" by Howell (*e.g.*, FAC ¶¶ 28, 63-64) during her consulting work

6    during 2015 to 2017. Plaintiff explicitly connects this case to the Utah lawsuit by

7    HMS (FAC ¶ 28) about that consulting work and her numerous duplicative lawsuits

8    that she has already filed before this one (*e.g.*, FAC ¶¶ 29, 41, 74), including by

9    alleging the misconduct alleged here "is a substantial factor in the continuing

10   litigation [with] HMS" (*Id.* at ¶ 89). Needless to say, Plaintiff cannot avoid the

11   forum selection clause by filing lawsuits about lawsuits; it is common sense that

12   litigation about an agreement arises from that agreement.

13          Plaintiff cannot avoid the Utah Forum Selection Provision "by

14   artful pleading of claims not based on the contract containing the clause" as her

15   allegations still "grow out of the contractual relationship[.]" *Korea Radio USA, Inc.*

16   *v. NY Metro Radio Korea, Inc.*, No. CV 07-7418 ODW(RCX), 2008 WL 11338439,

17   at *4 (C.D. Cal. Feb. 11, 2008). For example, pleading unfair competition does not

18   avoid a forum-selection clause from a contractual relationship. *See, e.g., Smith,*

19   *Valentino & Smith, Inc. v. Superior Court*, 17 Cal. 3d 491, 497, 551 P.2d 1206, 1210

20   (1976). However styled, Plaintiffs' claims necessarily arise out of the only

21   relationship she has ever had with Defendants – their contractual business. *See also*

22   *Wollam Int'l Corp. v. New Era Decorative Fabrics, Inc.*, B187650, 2007 WL

23   1866769, *8 (Cal. Ct. App. June 29, 2007) ("As for the fact that the defendants are

24   charged with fraud rather than breach of contract, this can get the plaintiff nowhere

25   in its efforts to get out from under the forum-selection clause.") (citation omitted).

26          Applying collateral estoppel on this already resolved issue, the enforceable

27   forum selection claims between them requires Plaintiffs latest duplicative attempt at

28   more out-of-forum claims against the HMS Defendants in California be dismissed.

### 2. Plaintiff Cannot Split Claims to Pursue Simultaneous (or Serial) Duplicative Suits Against the HMS Defendants.

In her campaign of duplicative litigation, Plaintiff does not wait for dismissal of a prior suit to file new claims against HMS. Plaintiff years' long abuse of the judicial system has featured a strategy of asserting new claims against the HMS Defendants in new cases even while other duplicative cases filed by her remain pending. Before removal of this case, Plaintiff already had another lawsuit pending in this District against the HMS Defendants, filed on February 19, 2020. (Case No. 3:20-cv-00321-RBM-KSC.) Indeed, when that prior case was filed, Plaintiff was still pursuing on appeal two even earlier cases in this District against Defendants arising out the same facts. (S.D. Cal. Case Nos. 3:18-cv-02010, 3:19-cv-0512.)

Basic notions of fairness and the integrity of the judicial system require that this practice not be indulged. Plaintiff cannot pursue duplicative claims, whether to avoid unfavorable jurisdictional rulings, denial of leave to amend, harass Defendants, or otherwise. "The doctrine of claim-splitting bars a party from bringing claims arising from the same set of facts in successive actions, rather than bringing them all at once." *Rivera v. Am. Fed'n of State, Cty., and Mun. Employees, AFL-CIO, Local 444* No. 3:16-cv-04959, 2017 WL 3021038, at *3 (N.D. Cal. July 17, 2017) (citing *United States v. Haytian Republic*, 154 U.S. 118, 125 (1894)). In short, "[p]laintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court against the same defendant." *Adams v. California Dep't of Health Servs.* (9th Cir. 2007) 487 F.3d 684, 688, *overruled in part on other grounds by Taylor v. Sturgell* 553 U.S. 880 (2008); *see also Single Chip Systems Corp. v. Intermec IP Corp.* 495 F.Supp.2d 1052, 1059 (S.D. Cal. 2007). The purpose of the rule is to "protect the Defendant from being harassed by repetitive actions[.]" *Clements v. Airport Auth. of Washoe Cty.* 69 F.3d 321, 328 (9th Cir. 1995) (citing Restatement (Second) Judgments § 26).

Claim splitting is a species of claim preclusion. *In re Associated Vintage*

*Group, Inc.*, 283 B.R. 549, 555 (B.A.P. 9th Cir. 2002). But the rule also bars simultaneous pursuit before a final judgment in the prior case. *Single Chip Sys. Corp.*, 495 F.Supp.2d at 1058. "[T]he primary difference [between the claim-splitting doctrine and res judicata] is that, in claim-splitting, a litigant is able to move for dismissal *without* demonstrating that 'a court of competent jurisdiction has entered a final judgment on the merits' in the first action." *Cook v. C.R. England, Inc.* No. 12-cv-3515, 2012 WL 2373258, at *3 (C.D. Cal. June 21, 2012). "It is clear that a motion to dismiss based on improper claim splitting need not[,] indeed, often cannot wait until the first suit reaches final judgment[.]" 495 F. Supp. 2d at 1059.

Thus, the rule "borrow[s] from the test for claim preclusion," but it "assum[es] that the first suit were already final." *Adams,* 487 F.3d at 688-89 (affirming dismissal of second suit for claim-splitting while first suit was still pending). The court must determine if the claims are sufficiently the same and whether the parties, or their privies, are the same. *Id*. To determine whether two causes of action are similar, courts apply a transactional test. *Id.; see also Int'l Union v. Karr* 994 F.2d 1426, 1429-30 (9th Cir.1993). "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa* 958 F.2d 864, 871 (9th Cir. 1992). As already detailed above, Plaintiff's latest recast claim against the HMS Defendants is impermissibly duplicative of her 2020 lawsuit – not to mention her 2018 and 2019 California Litigation and her Utah Counterclaims. Her allegations necessarily share the same core: the lone former business relationship between them – and litigation that has followed and she has needlessly multiplied.

Dismissal is an appropriate remedy for a duplicative action. *See Adams*, 487 F.3d at 688; *see also Agha-Khan v. United States* No. 1:13-cv-01378, 2015 WL 5734380, at *6 (E.D. Cal. Sept. 29, 2015) (dismissing claims with prejudice where, among other fatal flaws, suit constituted impermissible claim-splitting). "Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of

proceedings, promotes judicial economy and the 'comprehensive disposition of litigation.'" *Id.* at 692-93 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.* 342 U.S. 180, 183, 72 S.Ct. 219 (1952). Accordingly, dismissal of Rota's latest duplicative case is required to stop her continued impermissible claim splitting.

### B.   Plaintiff's Convoluted Allegations Do Not Provide Fair Notice of a Plausible Claim.

To the extent her confusing complaint and lone claim against the HMS Defendants can be deciphered, Plaintiff's convoluted factual allegations are not just implausible, but also impossibly contradictory and nonsensical. Consequently, the most basic pleading requirement of fair notice requires dismissal of her latest claim against the HMS Defendants.

As a general rule, *pro se* complaints are "held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, a *pro se* litigant's pleadings still must at least provide defendants fair notice of what they allegedly did wrong. *See Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995). Moreover, liberal construction is only afforded to a plaintiff's factual allegations, *Neitzke v. Williams*, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827 (1989), but courts need not accept "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

The minimum standard of Federal Rule of Civil Procedure 8 requires a pleader to put forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In general, "[e]ach allegation must be simple, concise, and direct." Rule 8(d)(1). This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)" as "[p]rolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Thus, dismissal on Rule 8 grounds where the complaint is "verbose, confusing and conclusory,"

*Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981), or where it is "impossible to designate the cause or causes of action attempted to be alleged in the complaint," *Schmidt v. Herrmann*, 614 F.2d 1221, 1223 (9th Cir. 1980). Despite the flexibility of pleading under the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

In other words, Rule 8 justifies dismissal of complaints that are "confused, or consisted of incomprehensible rambling." *Cafasso v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1058-59 (9th Cir. 2011) (discussing cases in which the Ninth Circuit affirmed Rule 8 dismissals). Complaints that fail to comply with the minimum standard of Rule 8 impose unfair burdens on judges and litigants. *Jacobson v. Shwarzenegger*, 226 F.R.D. 395, 397 (C.D. Cal. 2005) ("Neither the court nor the defendants should be compelled to cull through pages of rambling narrative, argument and needless digression to discover the factual bases for [Plaintiff's] claims."); *Sparling v. Hoffman Construction Co., Inc.*, 864 F.2d 635, 640 (9th Cir. 1988) (noting that a complaint that contains factual elements of a cause of action scattered throughout the complaint and not organized into a "short and plain statement of the claim" may be dismissed for failure to satisfy Rule 8(a)).

Failure to comply with Rule 8(a) is grounds for dismissal on its own. *Nevijel*, 651 F.2d at 673 ("A complaint which fails to comply with rules 8(a) and 8(e) may be dismissed with prejudice pursuant to rule 41(b)."). Even if the factual elements of the cause of action are present, but are "scattered throughout the complaint and are not organized into a 'short and plain statement of the claim,' dismissal for failure to satisfy Rule 8 is proper" under Rule 41(b).  *Bravo v. Cnty. of San Diego*, No. C 12-06460, 2014 WL 555195, at *2 (N.D. Cal. Feb. 10, 2014) (citing *McHenry*, 84 F.3d at 1178).

Plaintiff's convoluted factual allegations are impossibly contradictory and nonsensical. For example, Plaintiff alleges that it was the BC Defendants who

disrupted her business relationship with the HMS Defendants with salacious accusations. *See, e.g.,* FAC ¶ 73 ("BC Defendants knowingly disrupted the relationship between HMS and Plaintiff and to her prospective relations with the universities."); *see also* ¶ 41 (alleging BC Defendants told HMS that Plaintiff was engaged in sexual impropriety); *see also* FAC ¶¶ 24, 49. At the same time, Plaintiff makes the contrary allegation that it was the HMS Defendants that disrupted her relationship with the BC Defendants with salacious accusations. *See, e.g.,* FAC ¶ 33 (alleging HMS made a false filing in Utah "to turn BC against Plaintiff disrupting her staffing business"); ¶ 35 ("HMS interfered in Plaintiff's business with BC . . . [by] attempt[ing] to paint Plaintiff as unchaste, using 'cheap tricks' to defame her and to influence a BC . . . to stop working with Plaintiff."); ¶ 36 (alleging "disparagement" by HMS that caused losses to Plaintiff).

As another example, the timing of Plaintiffs' core allegations are in fundamental conflict. According to her own allegations, Plaintiff chose to end her work with HMS in 2017. FAC ¶ 28 ("Plaintiff worked with HMS Defendants . . . till (sic) March 2017 when she ended her employment[,]"). Yet, she alleges that this "complaint arises out of facts in 2020" (FAC ¶ 30), particularly statements "made in July 2020 on a phone call with Mr. Howell, Mr. Hariss, and Ms. Mubeen Taj" (*id.* ¶ 45) that caused "erosion of trust between HMS and Plaintiff" (*id.*, ¶ 49) and "hurt[] Plaintiff's business relationships and the ability to transact business with HMS" (*id.*, ¶ 60) – a business relationship that ended more than three years earlier, allegedly by her, and was the subject of litigation between them.

These two examples illustrate the incomprehensible and impossible nature of Plaintiff's complaint as a whole, particularly the allegations against the HMS Defendants. Even applying a lenient approach to a *pro se* plaintiff, the allegations against the HMS Defendants fall far short providing them fair notice of the claims against them and should be dismissed.

/ / /

### C.   Plaintiff Alleges Facts Inconsistent with her Claim for Unfair Competition in Supposed Violation of the Sherman Act

Plaintiff's Fifth Cause of Action is the lone claim against the HMS Defendants and is styled as one for "Unfair Competition," seemingly based on allegations of an agreement with the BC Defendants in restraint of trade. FAC ¶¶ 82-101. Plaintiff appears to be attempting to allege conduct in "violation of the Sherman Act" (FAC ¶ 95) a federal antitrust statute from 1890 (15 U.S.C. § 1 *et seq.*).

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations[.]" 15 U.S.C. § 1. Despite the breadth of the statutory language, "the Supreme Court 'has long recognized that Congress intended to outlaw only unreasonable restraints.'" *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1177-78 (9th Cir. 2016) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)). Thus, to state a claim for an anticompetitive agreement in violation of Section 1 of the Sherman Act, a plaintiff must plead evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir.1989); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007). To satisfy the first prong, a plaintiff may not simply allege an agreement or conspiracy, but rather must provide information as to the "specific time, place, or person involved in the alleged conspiracies." *Twombly*, 550 U.S. at 564; *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008).

"In addition to these elements, plaintiffs must also plead (4) that they were harmed by the defendant's anti-competitive contract, combination, or conspiracy, and that this harm flowed from an 'anti-competitive aspect of the practice under

scrutiny.' This fourth element is generally referred to as 'antitrust injury' or 'antitrust standing.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) (citations omitted); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (a plaintiff "must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Antitrust injury requires four elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Somers v. Apple, Inc.*, 729 F.3d 953, 963-94 (9th Cir. 2013) (quotation marks and citations omitted).

Plaintiff not only fails to state a violation of the Sherman Act, but she also definitively pleads herself out of such a claim for numerous fundamental reasons.

### 1. Plaintiff's Nonsensical Antitrust Allegations Cannot Overcome Plausible and Ordinary Legal Conduct by Defendants.

An anticompetitive agreement cannot be inferred from allegations that "just as easily suggest rational, legal business behavior." *Kendall*, 518 F.3d at 1049. To be plausible, allegations of such an agreement between antitrust co-conspirators must be made with facts "tending to exclude the possibility of independent action." *Twombly*, 550 U.S. at 553. Perhaps the most fundamental threshold is that "[a]ntitrust claims must make economic sense." *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998). The gist of Plaintiff's convoluted claims against HMS (and the BC Defendants) seems to be that they have declined to continue to work with her. Plaintiff alleges no comprehensible facts why Defendants are logically or legally compelled to work with her. The obvious plausible explanation under the circumstances – which is no violation – is that Defendants have chosen not to continue do business with Plaintiff after the termination of their contract, which was followed by litigation over payment and other misconduct. Plaintiff's allegations of salacious talk or litigation filings years

Law Office of
Timothy A. Horton

16

Case No. 3:22-cv-00900-GPC-MSB
HMS Defs.' Motion to Dismiss

1   later souring the relationship ended years earlier make no sense.

2       **2. Plaintiff's Personal Grievance is Not an Anti-Trust Injury.**

3      Interpreted most liberally, Plaintiff alleges that, for reasons of personal

4   animus, Defendants have excluded ***her*** from their business. This is not a harm

5   sufficient for standing. The antitrust injury required to state a Sherman Act claim

6   "mean[s] an 'injury of the type the antitrust laws were intended to prevent'—*i.e.*, an

7   injury to competition." *Somers*, 729 F.3d at 967 (quoting *Brunswick Corp.,* 429 U.S.

8   at 489). Relevant here, injury to competition requires that competition itself has been

9   injured, rather injury to a specific competitor or competitors. *See Rutman Wine Co.*

10  *v. E & J Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987*); see also Les Shockley*

11  *Racing*, 884 F.2d 504 (holding that Sherman Act claimants must plead "a reduction

12  of competition in the market in general and not mere injury to their own positions as

13  competitors in the market"). In other words, allegations that amount to "[m]ere

14  injury to [the plaintiff] as a market competitor is not sufficient." *Hip Hop Beverage*

15  *Corp. v. Monster Energy Co.*, 733 F. App'x 380, 381 (9th Cir. 2018) (unpublished).

16  Put another way, "removal of one or a few competitors need not equate with an

17  injury to competition." 884 F.2d at 508. Plaintiff's allegation that she was singled

18  out for exclusion is not an actionable antitrust claim.

19      **3. Exclusivity in an Insubstantial Market Share Is Not Actionable.**

20     Plaintiff's confused allegations could perhaps be interpreted to allege and

21  challenge as a violation that Defendants impermissibly rely on exclusive contracts in

22  their line of business. The Supreme Court has held that the Sherman Act does not

23  restrict the long-recognized right of a business to freely exercise its discretion as to

24  the parties with whom it elects to deal. *Verizon Communs., Inc. v. Law Offices of*

25  *Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004). Doing so is not the equivalent of

26  reducing competition. *Id.*  Indeed, even exclusive contracts have "well-recognized

27  economic benefits" and are ordinarily permissible. *Omega Envtl., Inc. v. Gilbarco,*

28  *Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997). As such, where it is the basis of a

Sherman Act claim, a "plaintiff must prove that [an] exclusive dealing arrangement actually foreclosed competition" and did so "in a substantial share of the line of commerce affected." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010) (citing *Omega*, 127 F.3d at 1162).

Plaintiff has not plausibly alleged that HMS has foreclosed a "substantial share" of the market with exclusive arrangements; rather, she has effectively alleged that the conduct impacts an insubstantial share. Courts have quantified substantial share as "40% to 50% of the relevant market." *See Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1029-30 & n.8 (N.D. Cal. 2015) (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 70 (D.C. Cir. 2001)).[3] Plaintiff alleges there are "9 programs" that make up the "CPT market" (FAC ¶ 83) and that "HMS is the only provider of CPT for Ottawa and HUST" (FAC ¶ 99), two of the 9 which is only 22% of the programs. *See also* FAC ¶ 83 (alleging "the Ottawa business, . . . represents 11% of the CPT market share (and 22% with HUST)"). Taken as true, she alleges only half of what is required for an actionable share, again requiring dismissal.

### D.    Plaintiff Lacks Standing and Capacity to Bring Her Claim

Even if a Sherman Act claim were possible, Plaintiff lacks standing to bring such an unfair competition claim arising from a commercial relationship or right of her own, but one that belongs to her company – a separate legal entity.

Antitrust standing is a jurisdictional prerequisite to a claim for violation of the Sherman Act for an agreement in restraint of trade. *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 744 (9th Cir. 2012). Among the factors, is the directness of the alleged injury. *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996). Claims of indirect harm to third person falls short of the requisite direct injury. *Ass'n. of Wash. Publ.*

---

[3] The analysis is the same under Section 2 of the Sherman Act. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995) ("a market share of less than 50 percent is presumptively insufficient to establish market power" for an actual monopolization claim).

*Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001).

Plaintiff specifically alleges that her claims are "related to Plaintiff's staffing business August Network." (FAC ¶ 32.) Her contacts with the BC Defendants at the heart of her complaint are alleged to be about work with them "for Plaintiff's entity, August Network." (*Id.* ¶ 15.) Where the complaint alleges "Plaintiff began working with" the Bluechip Defendants, it references "the contract attached [as] (Exhibit A)," which reflects a relationship between one of the BC entity defendants and "August Network LLC," not Plaintiff individually. (*Id.* ¶ 13, Ex. A.)

Moreover, Plaintiff cannot bring claims on behalf of an entity, which must be represented by counsel. "Only natural persons representing their individual interests" may appear in this court *pro se* without an attorney. Civ. Loc. Rule 83.3(j). All other parties, including companies, must appear only through an admitted attorney. *Id.; see also United States v. High Country Broad. Co.,* 3 F.3d 1244, 1245 (9th Cir. 1993) ("A corporation may appear in federal court only through licensed counsel."). This prohibition includes that an officer or owner of a company cannot appear on its behalf. *In re Am. W. Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994) ("non-attorney members of a partnership [cannot] appear on behalf of the partnership"); *Laskowitz v. Shellenberger*, 107 F. Supp. 397, 398 (S.D. Cal. 1952) (a corporation "cannot appear by an officer of the corporation who is not an attorney, and may not even file a complaint except by an attorney[.]"). Moreover, as a "general rule," *pro se* plaintiffs, like Plaintiff Vashisht-Rota here, are prohibited "from pursuing claims on behalf of others in a representative capacity." *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008). Plaintiff's lack of standing and capacity require dismissal.

**E.      Plaintiff's Failure to Serve the Indispensable BC Defendants Requires Their Dismissal and Dismissal of the HMS Defendants.**

Plaintiff's failure to prosecute her action against the four original defendants is another independent basis for dismissal of her claims against moving HMS Defendants. Plaintiff has failed to serve the four BC Defendants in India, named

since her original complaint filed in state court on January 5, 2021, nearly a year and a half or more than 500 days ago. Plaintiff has failed completed service despite several promises to do so and having repeatedly been given more time for service by the state court prior to removal.

While the statutory 120-day limit of Rule 4(m) for domestic service does not apply to service in a foreign country (*see Lucas v. Natoli*, 936 F.2d 432 (9th Cir. 1991)), courts recognize that "the amount of time allowed for foreign service is not unlimited." *Miyasaki v. Treacy*, No. 12-CV-04427, 2014 WL 6687321, at *4 (N.D. Cal. Nov. 24, 2014) (quoting (*Nylock Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005) (imposing limit "[b]ecause district courts need to be able to control their dockets[.]"); *Teetex LLV v. Zeetex, LLC*, No. 20-cv-07092-JSW (N.D. Cal. April 22, 2022); *see also Feliz v. MacNeill*, 493 Fed. App'x 128, 131 (1st Cir. 2012) ("[C]ourts have leave to dismiss for failure to serve abroad when a plaintiff is dilatory."). The more than 75 weeks that have passed by the filing of this motion provided Plaintiff with more than sufficient opportunity to serve the BC defendants.

Dismissal of the BC defendants, in turn, dictates dismissal of the HMS defendants. Pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, a party may move to dismiss a case for "failure to join a party under Rule 19." Rule 19 states "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19. If joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* Thus, Rule 19 imposes a three-step inquiry: (1) whether the absent party is necessary (*i.e.*, required to be joined if feasible) under Rule 19(a); (2) if so, whether it is feasible to order that absent party to be joined; and (3) if joinder is not feasible, whether the case can proceed without the absent party, or whether the absent party is indispensable such that the action must be dismissed. *Salt River*

*Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). "Necessary" refers to a party who should be joined and "indispensable" refers to "a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n. 5 (9th Cir. 2004).

An absentee is necessary either if the Court "cannot accord complete relief among the existing parties" or if the absentee "claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(A) & (a)(1)(B). If an entity's presence is critical to the disposition of important issues in the case, and/or its evidence will either support the complaint or bolster the defense, it is a necessary party. *Freeman v. NW. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir.1985). In assessing "complete relief" for Rule 19(a), courts must consider how effective a judgment would be at resolving the controversy between the present parties. *Evergreen Park Nursing & Convalescent Home, Inc. v. Am. Equitable Assurance Co.*, 417 F.2d 1113, 1115 (7th Cir. 1969). In other words, the goal of Rule 19(a)(1) is to protect the interests of the parties by affording complete adjudication of the dispute; judicial economy is aided by avoiding repeated lawsuits concerning the same subject matter. *Schutten v. Shell Oil Co.*, 421 F.2d 869 (5th Cir. 1970).

"Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118, 88 S.Ct. 733 (1968). The court must consider (1) the extent to which a judgment rendered in a necessary party's absence might prejudice that party or the other parties, (2) the extent to which the court could lessen or avoid any prejudice, (3) whether a judgment rendered without the absent necessary party would be adequate, and (4) whether the plaintiff has some other adequate remedy. Fed. R. Civ. P. 19(b); *see also Paiute-Shoshone Indians of Bishop Cmty. Colony v. City of Los Angeles*, 637 F.3d 993, 1000 (9th Cir. 2011). The court must make a

"practical examination of the circumstances to determine whether an action may proceed." *Paiute-Shoshone*, 637 F.3d at 1000. The general rule that joint tortfeasors are permissive rather than necessary parties does not apply "when the absent party is more than a key witness, but also an active participant in the allegations that are critical to the disposition of the litigation." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 906 (C.D. Cal. 2011) (citing *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999).

Here, the BC Defendants indisputably are at the very heart of Plaintiff's claims. The BC Defendants – ahead in the caption – were the original parties sued by Plaintiff and are named in all the claims, whereas the HMS Defendants were belated added with a single claim. Under such circumstances, the BC Defendants are so essential to this case as to be indispensable. Somehow attempting to litigate this matter in California to an eventual judgment without the primary defendants who are supposedly the other half of an anticompetitive agreement, would be inherently unfair to the HMS Defendants, make complete adjudication impossible, and disregard any likelihood of judicial economy. For these reasons, the absence of the BC Defendants in this Court dictates dismissal of the HMS Defendants as well.

## IV. <u>CONCLUSION</u>

Plaintiff's latest duplicative lawsuit violates the rule against claim-splitting. Plaintiff is collaterally estopped from relitigating that any claims arising out her former relationship with the HMS Defendants must be dismissed under the doctrine of *forum non conveniens* given the parties' choice of Utah state courts as the exclusive forum. Furthermore, her confused allegations fail to state a claim for violation of the Sherman act, contradicting what is required. Plaintiff lacks standing and capacity to bring a claim on behalf of her entity and has failed for a year and a half to serve the indispensable BC Defendants. For all these reasons, this Court

/ / /

/ / /

1 should dismiss Plaintiff's claim against the HMS Defendants with prejudice.

2 DATED:  June 28, 2022                    LAW OFFICE OF TIMOTHY A. HORTON

3

4                                          By: */s/ Timothy A. Horton*
                                              Timothy A. Horton

5                                              Attorneys for Defendants Howell
                                              Management Services and Chris Howell

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28